UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN KABROVSKI and MICHELLE
McQUAY,                                                      DECISION AND ORDER

                                    Plaintiffs,             15-CV-6030 CJS

                    -v-

CITY OF ROCHESTER, NEW YORK, HEIDI
ZIMMER-MEYER, EUGENIO MARLIN,
DAVID L. WATSON, STEVEN B. REBHOLZ,
HELEN B. HOGAN, CITY OF ROCHESTER
PLANNING COMMISSION,
                                    Defendants.

_____

APPEARANCES

For Plaintiffs:          R. Brian Goewey, Esq.
                         45 Exchange Boulevard, Suite 716
                         Rochester, New York 14614

For Defendants:          John M. Campolieto, Esq.
                         City of Rochester Law Department
                         City Hall, Room 400-A
                         30 Church Street
                         Rochester, New York 14614-1295

INTRODUCTION

Plaintiffs, who operate a restaurant in the City of Rochester, commenced this action

pursuant to 42 U.S.C. § 1983 after the defendant City of Rochester Planning Commission

restricted their ability to present live outdoor amplified music.  Now before the Court is

Defendants' motion (Docket No. [#6]) to dismiss the action pursuant to Federal Rule of Civil

Procedure 12(b)(6).  The application is granted.

BACKGROUND

At the outset the Court must determine what facts it may consider when ruling upon Defendants' motion.  It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited in what it can consider.  *See, e.g., Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y.Sep. 24, 2012) ("[T]he [general] rule [is] that documents outside the pleadings cannot be considered in a 12(b)(6) motion.").  On a 12(b)(6) motion,

> the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir.2002) (citations omitted).  In determining whether a document is "integral" to the complaint, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*, 282 F.3d at 153 (citation and footnote omitted).

In this action the Complaint references decisions by the City of Rochester's Planning Commission, as well as portions of the City Code.  These documents are integral to the Complaint, and accordingly, the Court considers them in ruling upon Defendants' motion.  Plaintiffs also  filed an unsuccessful Article 78 proceeding in New York State Supreme Court, Monroe County, concerning the same subject matter, and the Court takes judicial

notice of Supreme Court's Decision and Order dismissing that action, even though Plaintiffs omitted any reference to that lawsuit from their Complaint.[1]

In 2004, Plaintiffs began operating the New Orleans Louisiana Waterfront Barbeque, under the name Nolas BBQ ("Nolas"), in the City of Rochester.  Nolas is located at 4769-4775 Lake Avenue, near Ontario Beach Park.  Residential neighborhoods are located to the South and West of Nolas.  Between 2004 and 2014, Nolas has applied for and been granted several special use permits allowing outdoor musical performances.  Such special use permits were granted by the City Planning Commission, pursuant to the Rochester City Zoning Code, § 120-192(B).

Initially, beginning in 2005, the special use permits allowed Nolas to have live outdoor amplified entertainment on any day of the week, until 10 pm.  In 2007, the City issued Nolas a special use permit that limited outdoor amplified entertainment to Wednesdays, Fridays and Saturdays until 10 pm, and Sundays until 9 pm.  The 2007 permit also allowed Nolas to have outdoor amplified entertainment on five additional days (Monday, Tuesday or Thursday) until 10 pm.  The 2007 permit was for a term of five years, and expired at the end of 2012.  During that five-year period, Plaintiffs made certain improvements to Nolas, including adding a patio, outdoor stage and a deck overlooking the stage.  These improvements were financed, in part, by a $15,000 grant from the City of Rochester.

---

[1]*See, e.g., Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) ("The Court may also take judicial notice of all documents in the public record, including the decisions of the ZBA, the decisions of the Supreme Court in the Article 78 proceedings, and the provisions of the Village zoning code, that the Parties have submitted in affidavits with their motion papers. 'It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).' *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998).") (other citations omitted).

When the aforementioned permit expired, Nolas applied for a new five-year special use permit.  However, by that time, the City had received "dozens of letters, emails, photos and videos" from citizens, complaining that "the outdoor music [at Nolas] ha[d] become too loud."[2]  The record indicates that in response to such complaints, Nolas "offered to limit the hours of its outdoor music and to install sound panels on the west and south side[s] of the property." On May 2, 2013, the City issued a four-month permit, which reduced Nolas' ability to provide outdoor amplified musical entertainment.  Specifically, the permit provided, in pertinent part, that Nolas could have "acoustic music only (no amplification)" on Sundays and Wednesdays between 3 pm and 10 pm, and "amplified music" on Fridays and Saturdays between 3 pm and 10 pm.  The permit prohibited "outdoor music" on Mondays, Tuesdays and Thursdays.  The permit further required Nolas to "install sound panels" on the South and West sides of the property.  The Commission indicated that Nolas would need to return to the Commission in October 2013, "to assess the impacts of the live entertainment with the new mitigation measures."

On June 20, 2013, the Planning Commission amended its decision, to clarify that on Sundays and Wednesdays, when "acoustic music" was allowed, vocalists and instrumentalists could use microphones attached to "small speakers," but instruments could not be plugged directly into amplifiers.  Neither the May 2013  decision nor the amended June 2013 decision mentioned the City's noise ordinance.

Plaintiffs subsequently challenged the Commission's ruling by filing an Article 78 proceeding in New York State Supreme Court, Monroe County.  Specifically, Plaintiffs alleged that the Commission's ruling was arbitrary, capricious and lacking a substantial

---

[2]Campolieto Affirmation, Exhibit C, May 2013 Decision, at p. 3.

4

basis.  However, on January 23, 2014, Supreme Court denied the application, finding that the Commission's decision was supported by substantial evidence and was not arbitrary, capricious or an abuse of discretion.[3]

Plaintiffs, meanwhile, applied for a new special use permit.  On January 24, 2014, the Commission issued Plaintiffs a three-year permit that further reduced Plaintiffs' ability to present live outdoor *amplified* music.  In that regard, the permit eliminated the ability to have amplified music on Fridays and Saturdays, and instead indicated that all music on Friday, Saturday, Sunday and Wednesday had to be acoustic music, though Plaintiffs could apply to have up to five outdoor amplified events on Fridays and/or Saturdays.  Additionally, the permit indicated that music on Sundays and Wednesdays had to end by 8 pm.[4]  As part of its decision, the Planning Commission reiterated that it had received "numerous complaints" about outdoor amplified music at Nolas, including some from neighbors who indicated that music from Nolas caused their homes to shake and prevented them from sleeping even when their windows were closed.  The Commission further indicated that Plaintiffs had completed only "<u>some</u> of the mitigation measures" that had been required in the earlier permit (emphasis in original), and that Plaintiffs had also violated the earlier permit on some occasions by allowing musicians to plug their instruments into amplifiers on nights that were supposed to have only acoustic music.

The  Commission's  2014  decision  contained  three  references  to  the  City's  noise ordinance.  First, the decision noted that, "it is evident that the previous mitigation efforts did

---

[3]Campolieto Affirmation Exhibit B, Judgment and Order.

[4]Campolieto Affirmation Exhibit E, January 2014 decision.

not bring the use into compliance with the noise ordinance."[5]   Second, the decision indicated that if Plaintiffs wanted to apply for additional permits for amplified music on Friday or Saturday nights, they would have to present to the Commission, "with adequate time for review by an expert, a mitigation plan that details all efforts to adhere to Chapter 75 of the Municipal Code."[6]   Lastly, the decision's closing paragraph, which summarized the Commission's ruling, reiterated that if Plaintiffs wanted to have more than five amplified events they would need to submit a mitigation plan detailing their "efforts to adhere to [the noise ordinance]."[7]

Plaintiffs did not file an Article 78 proceeding concerning the 2014 permit.  Instead, on January 16, 2015, Plaintiffs commenced this action pursuant to § 1983, asserting the following six causes of action p: 1) "First Amendment Violation" concerning the City's noise ordinance; 2) "[Fourteenth] Amendment Due Process Violation - 1"; 3) "[Fourteenth] Amendment Equal Protection Violation"; 4) "[Fourteenth] Amendment Due Process Violation -2"; 5) "[Fourteenth] Amendment Due Process Violation -3"; and 6) "Violation of the [Fifth] Amendment Takings Clause."  On April 17, 2015, Defendants filed the subject motion to dismiss. The motion was fully briefed, and on October 13, 2015, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

Defendants have moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The legal principles applicable to such a motion are clear:

---

[5]Campolieto Affirmation Exhibit E, January 2014 decision,  at p. 5.

[6]Campolieto Affirmation Exhibit E, January 2014 decision, at p. 6.

[7]Campolieto Affirmation Exhibit E, January 2014 decision, at p. 7.

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).   When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657 (2000).

Section 1983

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) "that some person has deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citation and internal quotation marks omitted).   Here, there is no dispute that Defendants acted under color of state law, and therefore, the issue is whether Plaintiffs have plausibly pleaded that they were "deprived of the constitutional rights identified in [their] complaint." *Id*.

7

Due Process

The Complaint alleges that Defendants violated Plaintiffs' Fourteenth Amendment Due Process rights in several ways.  Specifically, Plaintiffs maintain that the Planning Commission's decisions in 2013 and 2014 were "a denial of due process since the Commission exercised power without any reasonable justification in the service of a legitimate governmental objective" (Count II); the Commission violated due process by unreasonably suggesting that live amplified performances could comply with the Municipal Code's Noise Ordinance (Count IV);  and the Commission violated due process by relying, in its decision, on the City's Noise Ordinance, which is vague and overbroad (Count V).

To state a procedural or substantive[8] due process claim based on the denial of a special use permit, plaintiffs must first establish they had a constitutionally protected property interest in the permit. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir.2002); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir.1999). The Second Circuit uses a "strict entitlement" test to determine whether a plaintiff holds such an interest. *Zahra v. Town of Southold*, 48 F.3d 674, 681 (2d Cir.1995).[9] Under this test, a plaintiff has a

---

[8]"To succeed on a procedural due process claim, a plaintiff must first establish a valid property interest within the meaning of the Constitution, and second demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him or her of that property interest." *Salvador v. Adirondack Park Agency of State of New York*, 35 Fed. Appx. 7, 12 (2d Cir. Apr. 26, 2002) (citation and internal quotation marks omitted). On the other hand, "[s]ubstantive due process is an outer limit on the legitimacy of governmental action. *It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.* Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (emphasis added, citations omitted).

[9]The "strict entitlement" or "clear entitlement" test "applies only to permits being sought," and not to permits that have already been granted. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995). Here, Plaintiffs were seeking new permits, and have not argued, or plausibly asserted, that they had any continuing  property right arising from the previously-issued expired permits. *See, 33 Seminary LLC v. City of Binghamton*, No. 3:11-CV- 1300 MAD, — F.Supp.3d — , 2015 WL 4546272, at *18 (N.D.N.Y. July 28, 2015) ("Any constitutionally protected property interest 26 Seminary may have had in the building permits expired when the term of the permit expired[.]"); *see also, Salvador v. Adirondack Park Agency*, 35 Fed.Appx. at **3 (No property interest in an expired permit).

protected property interest in a permit if "the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met," *Natale v. Town of Ridgefield*, 170 F.3d at 263, "or if the discretion of the issuing agency was so narrowly circumscribed that approval of a proper application was virtually assured." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir.1998) (internal citation omitted).

*Michael's Rest. & Sports Bar, Inc. v. Vill. of Fishkill*, No. 13 CV 8392 VB, 2014 WL 3887200, at *2 (S.D.N.Y. June 16, 2014).

In the instant case, the Complaint does not expressly claim that Plaintiffs had "a constitutionally protected property interest" in a permit allowing them to have outdoor amplified music, nor does it allege facts from which such an inference could be drawn.  For example, the Complaint does not identify any section of the City's Zoning Code indicating that the Commission was required to issue a permit allowing outdoor amplified music once Plaintiffs met specified objectively ascertainable criteria.  To the contrary, the Zoning Code, § 120-192(B)(4)(d)[5][m], indicates that the Planning Commission may impose conditions on special use permits, including "noise limitations," "as may be necessary to prevent or minimize adverse effects upon other property in the neighborhood."

Although Defendants' motion to dismiss argues that Plaintiffs lack a protected property interest,[10] Plaintiffs' responding papers fail to address that issue.  Consequently, Plaintiffs are deemed to have conceded the point.  *See*, *Rubin v. Abbott Labs.*, No. 13 CIV. 8667 CM, 2015 WL 5679644, at *7 (S.D.N.Y. Sept. 23, 2015) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citation omitted).  Essentially, Plaintiffs'

---

[10]Defendants' Memo of Law [#6-3] at pp. 19-21.

due process arguments focus entirely on the alleged unreasonable nature of the Commission's decision, without first establishing that they had protected property interest in the permit that they sought.  Since Plaintiffs have not plausibly pleaded that they had such an interest, their due process claims must be dismissed.

Equal Protection Clause

The Complaint maintains that Defendants' decision restricting live outdoor amplified music at Nolas violates equal protection, because other organizations, including two similar restaurants, are allowed to have live outdoor amplified music. (Count III).  The Complaint does not offer any reason, such as personal animosity, for why Plaintiffs believe they were treated less-favorably than owners of other establishments.   Instead, Plaintiffs are apparently asserting a "class of one" equal protection claim, by asserting that they are being treated differently than others similarly situated without a rational basis.[11]  However, a "class of one" equal protection claim requires a very high level of similarity between the plaintiff and the alleged similarly-situated entities:

> Although the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, a plaintiff who does not allege membership in a protected class may, nonetheless, bring a "class of one" equal protection claim.  A class-of-one claim exists where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  To state a claim, a plaintiff must identify at least one individual with whom he can be compared.
>
> *There must be an extremely high degree of similarity between the proposed comparator and the plaintiff such that an inference can be drawn that the plaintiff was intentionally singled out for reasons that so lack any reasonable*

---

[11]Complaint at ¶ 152.

*nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.* Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

Thus, to state a claim that will pass muster under Rule 12(b)(6), [plaintiffs] must plausibly allege that a property sufficiently similar to theirs was treated more favorably by the [municipality].

*Abramson v. Gettel*, No. 14-CV-2371 NSR, 2014 WL 6694505 at *5 (S.D.N.Y. Nov. 25, 2014) *aff'd*, 607 F. App'x 101 (2d Cir. 2015) (emphasis added, citations and internal quotation marks omitted).

Here, apart from asserting that the comparator business establishments have live outdoor amplified music and are located within the City of Rochester, Plaintiffs do not offer any facts to explain how they are similarly situated. For example, Plaintiffs admit that the Planning Commission received complaints from neighbors about the noise from outdoor amplified concerts at Nolas, but do not claim that the Commission received similar complaints about these other establishments.[12] Nor does the Complaint indicate that those other establishments are located adjacent to residential areas, as is Nolas.[13] Instead, the Complaint simply asserts that "plaintiffs are being treated differently than similarly situated

[12]Plaintiffs contend that the complaints about them were "unfounded," but they do not dispute that the Planning Commission actually received the complaints.

[13]In that regard, the Court takes judicial notice that two of the alleged comparator establishments that Plaintiffs identify, Pelicans Nest Restaurant and Schooners Riverside Pub, are located at 566 River Street and 40 Marina Drive, respectively. Both are waterfront properties, unlike Nolas, and both are located much farther from residential areas than Nolas.

11

businesses in an adverse manner,"[14] which is a conclusion and not a statement of fact.

Consequently, the Complaint fails to state a plausible equal protection claim.

Fifth Amendment Takings Clause

The Complaint contends that Defendants violated the Fifth Amendment's "Takings

Clause" by "eliminating" Plaintiffs' "ability to present seasonal live outdoor amplified music

entertainment" at Nolas, thereby reducing the value of the establishment without

compensation. (Count VI).

> The Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." *U.S. Const. amend. V.* The clause applies to the states through the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n. 1, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005).

*1256 Hertel Ave. Associates, LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014).

> Although initially the application of this rule was limited to instances where the government took physical control of another's property, beginning with *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), the Court recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment.  Supreme Court precedent indicates that two categories of regulatory action will be deemed *per se* takings for Fifth Amendment purposes.  First, where government requires an owner to suffer a permanent physical invasion of [his] property—however minor—it must provide just compensation.  Second, regulations that completely deprive an owner of 'all economically beneficial uses' of [his] property require just compensation. Outside of these two relatively narrow categories regulatory takings challenges are governed by the standards set forth in *Penn Central Trans. Co. v. New York City*, 438 U.S. 104 (1978).

---

[14]Complaint at ¶ 151.

*Jado Associates, LLC   v. Suffolk Cty. Sewer Dist. No. 4- Smithtown Galleria*, No. CV-12-3011 DRH ARL, 2014 WL 2944086 at *6 (E.D.N.Y. Jun. 30, 2014) (citations and internal quotation marks omitted); *see also*, *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) ("Anything less than a complete elimination of value, or a total loss, is a non-categorical [regulatory] taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).").

In this case, Plaintiffs do not claim that Defendants have physically invaded the property, or that they have deprived them of "all economically beneficial uses" of the property.  Instead, Plaintiffs, in their own words, contend that Defendants have "deprived Plaintiffs of the most beneficial use of the property and [have] reduced the value of said property for the purpose to which it is suited." Pl. Memo of Law [#8-1] at p. 17.  Accordingly, the Court views this as an alleged non-*per se* regulatory taking that must be analyzed under *Penn Central*.  In that regard, the Second Circuit has indicated that

> [t]he *Penn Central* analysis of a non-categorical taking requires an intensive *ad hoc* inquiry into the circumstances of each particular case.  We weigh three factors to determine whether the interference with property rises to the level of a taking: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

*Sherman v. Town of Chester*, 752 F.3d at 565 (Applying the *Penn Central* factors to a 12(b)(6) motion; citation and internal quotation marks omitted).

With regard to the first *Penn Central* factor, the Complaint does not indicate the economic impact that the Defendants' actions have had on the Plaintiff, except in vague and conclusory terms.  For example, the pleading indicates only that having "seasonal live

13

outdoor amplified music entertainment" had been "a fundamental part" of Nolas' business since 2005, and that since the City limited Nolas' ability to have outdoor amplified music, "Nolas has experienced reduced business and lost revenues."[15]  The pleading also vaguely states that "Nolas has suffered a substantial reduction in business and revenue as amplified live music is a major drawing card that generates business,"[16] though the Court observes that Nolas is not prevented from having "amplified live music" generally, but rather, is prohibited only from having *outdoor* live amplified music.  Further, and as already noted, the pleading indicates that Defendants have "deprived Plaintiffs of the most beneficial used of the property and [have] reduced the value of said property."[17]  However, it is well settled that a "taking" does not occur merely because a property owner is prevented from making the most financially beneficial use of a property. *See, Tirolerland, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 592 F. Supp. 304, 313 (N.D.N.Y. 1984) ("It is clear, however, that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred.") (citations and internal quotation marks omitted).  Overall, the pleading fails to plausibly allege an economic impact that rises to the level of a taking.

With regard to the second *Penn Central* factor, "the extent to which the regulation has interfered with distinct investment-backed expectations," the pleading fails to explain how Defendants' actions have interfered with Plaintiffs' "reasonable investment-backed expectations."  In that regard, the pleading merely indicates that at the time Plaintiffs opened Nolas in 2004, they "discuss[ed] with the City [their] plans for the operation of the restaurant

---

[15]Complaint ¶ ¶ 23, 42.

[16]Complaint at ¶ 83.

[17]Complaint ¶ 177.

14

after the closure of the often troubled Harbor Beach Club at the same location," which discussions "included [Plaintiffs'] plans to present live outdoor amplified music entertainment at Nolas."[18]  The pleading does not allege that Plaintiffs had any reasonable expectation that they would be able to have unrestricted live outdoor amplified music under the zoning code as it existed at that time, nor does it claim that Defendants, or anyone from the City of Rochester, gave Plaintiffs any assurances about their ability to have such entertainment. Instead, the pleading suggests that when Plaintiffs began operating Nolas, they understood that their ability to present outdoor amplified music would depend upon their ability to obtain special use permits, which could be denied, or which could contain limitations and restrictions.[19]  Furthermore, Plaintiffs obviously should have realized that Nolas was located adjacent to a residential neighborhood, and that excessive noise from outdoor performances would likely be restricted or prohibited altogether if neighbors complained, which is what eventually happened.   In short, the pleading fails to plausibly allege a taking under this factor.

With regard to the third *Penn Central* factor, "the character of the governmental action," the Second Circuit has indicated that "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Sherman v. Town of Chester*, 752 F.3d at 565 (citation omitted).  In this case, the restriction on Plaintiffs' use of their property clearly

---

[18]Complaint ¶ ¶ 21-22.

[19]*See, e.g.*, Complaint ¶ ¶ 24-25.

15

falls into the latter category, since it involves no physical invasion, and since it is designed to ensure that city residents living near Nolas can enjoy their property without being disturbed by excessive noise from outdoor amplified concerts.  Moreover, the restriction is neither complete nor permanent, since the special use permit is limited in duration, allows Plaintiffs to have five outdoor amplified concerts, and leaves the door open for further concerts if Plaintiffs can demonstrate a plan to control noise.

Considering all of the foregoing factors, the Court finds that the Complaint fails to state a takings clause claim.

<u>First Amendment</u>

Lastly, Plaintiffs maintain that Defendants violated their First Amendment rights by limiting their ability to present live outdoor amplified music at Nolas, based on the City's Noise Ordinance ("Chapter 75 of the Municipal Code"), which they contend is unconstitutionally vague and overbroad. (Count I).  Plaintiffs do not claim that the portion of the City Zoning Code dealing with special use permits, § 120-192(B),  is unconstitutional. Defendants respond that Plaintiffs lack standing to challenge the constitutionality of the City of Rochester's noise ordinance, since such ordinance was not the basis for the limitations placed on their special use permit.  Rather, Defendants point out that the subject special use permits were issued pursuant to § 120-192(B), though one of the Commission's decisions referred to the noise ordinance.

It is evident from the record that Plaintiffs are incorrect in asserting that they were denied the ability to present live outdoor amplified music based upon the City's noise ordinance.  Rather, the subject decisions of the Planning Commission are replete with references to the fact that they were based upon "Section 120-192 of the 2003 Zoning

16

Code." In that regard, § 120-192(B), entitled "Special Permit," lists five "approval standards,"

as follows:

[1] A special permit shall be approved only if evidence is presented which establishes that:

[a] The proposed application will be in harmony with the general purpose, goals, objectives, standards and implementation strategies of the Comprehensive Plan, this chapter and, where applicable, the Subdivision Code.

[b] The proposed application will not have a substantial or undue adverse effect upon adjacent property, the character of the neighborhood, traffic conditions, parking, utility facilities and other matters affecting the public health, safety and general welfare.

[c] The proposed application will be constructed, arranged and operated so as not to dominate the immediate vicinity or to interfere with the development and use of neighboring properties in accordance with the applicable district regulations.

[d] The proposed application will be served adequately by essential public facilities and services, such as highways, streets, parking spaces, police and fire protection, drainage structures, refuse disposal, water and sewers, and schools, or that the persons or agencies responsible for the establishment of the proposed use will provide adequately for such services.

[e] The proposed application will not result in the destruction, loss or damage of any natural, scenic, cultural or historic feature of significant importance.

§ 120-192(B)(3)(a)[1][a]-[e].  These five factors are specifically referenced and discussed

in the decisions by the Planning Commission, and form the basis for the Commissions'

decisions. *See*, Def. Affirmation in Support of Motion, Exhibits C-E.  For example, in the

Commission's 2014 decision, when considering whether the requested permit would "have a substantial or undue adverse effect upon adjacent property," the Commission discussed how it had received "numerous" complaints about outdoor amplified music at Nolas, and how Plaintiffs' purported attempts to reduce the noise had been ineffective.[20]   Notably, though, the Commission's decisions do not indicate that Plaintiffs violated the City's noise ordinance. And in fact, Plaintiffs acknowledge that they have never been found guilty of violating the noise ordinance.[21]

It is true that the Commission's 2014 decision indicated that if Plaintiffs wanted to have more than five outdoor amplified performances, they would need to provide "a mitigation plan that details all efforts to adhere to [the noise ordinance,] Chapter 75 of the Municipal Code."   However, the Commission did not state that actual compliance with Chapter 75 would be a condition.   Rather, the aforementioned statement indicates that Plaintiffs would need to make "efforts" to comply with the statute as part of an overall effort to reduce noise, which is the common theme running through the Commission's decisions inasmuch as § 120-192(B) of the Zoning Code specifically requires the Commission to consider any adverse effects that issuance of the special use permit would have on neighboring properties.

---

[20]Def. Affirmation in support of motion, Exhibit E at pp. 4-5.

[21]*See*, Complaint ¶ 49 ("Nolas has never been adjudicated as having violated the City's Noise Ordinance."); *see also, id*. at ¶ 56-57 (never been issued ticket for noise); *id*. at ¶ 72 (same); *id*. at ¶ 111 (same).  Indeed, the Complaint does not even allege that Nolas was ever issued a ticket for violating the noise ordinance.  In opposition to Defendant's motion, Plaintiffs' counsel now indicates that "Plaintiffs have only been issued two tickets for allegedly violating the Noise Ordinance since 2005.  All tickets were based on neighbor complaints and were dismissed as being unfounded. (¶ 61)."  As support for this statement, Plaintiffs' counsel cites to ¶ 61 of the Complaint, but that paragraph does not mention the issuance of two tickets, therefore the factual basis for such statement is unclear.  In any event, there is no allegation in the pleading that Plaintiffs were ever issued a ticket for violating the noise ordinance.

In considering whether Plaintiffs have standing to challenge the City's noise ordinance, the applicable law is well settled:

> A plaintiff has Article III standing to bring suit if (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Int'l Action Ctr. v. City of New York*, 587 F.3d 521, 529 (2d Cir. 2009) (citation omitted). "It is the burden of the party invoking federal jurisdiction to establish standing," but, "at the pleading stage, standing allegations need not be crafted with precise detail." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013) (citations omitted).

Here, Defendants maintain that Plaintiffs lack standing to challenge the City's noise ordinance, Chapter 75. Plaintiffs' response fails to even mention standing, and dismissal of the First Amendment claim is warranted on that basis alone. *See, Bond v. City of New York*, No. 14-CV-2431 RRM VVP, 2015 WL 5719706, at *8 (E.D.N.Y. Sept. 28, 2015) ("[C]ourts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of the applicable claims.") (citation omitted); *see also, Rubin v. Abbott Labs.*, 2015 WL 5679644 at *7 ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citation omitted).

Even if the Court were to construe Plaintiffs' response liberally, as it would do for a *pro se* litigant, it appears that Plaintiffs' strongest argument for standing is the following:

> The City claims that its Noise Ordinance is not the reason for the [Commission's] adverse actions towards Plaintiffs but has not attempted to

> explain why the Noise Ordinance is not relevant.  Since the [Commission's]
> adverse actions against Plaintiffs were based on complaints that music was
> too loud, the Noise Ordinance is *involved* since it is the local law that attempts
> to regulate sound, defined as 'excessive noise' and defines what constitutes
> a prima facie violation of the ordinance.

Pl. Memo of Law [#8-1] at pp. 7-8 (emphasis added).  As an initial matter, Plaintiffs are incorrect in stating that Defendants failed to explain why the noise ordinance is not relevant here; in fact, Defendants explained exactly that in their moving papers. *See, e.g.*, Def. Memo of Law [#6-3] at p. 7, n.1; pp. 13-15.  Beyond that though, Plaintiffs' argument boils down to this:  The restrictions attached to the special use permits were related to excessive noise, and therefore Plaintiff's were injured by the noise ordinance.

The Court disagrees.  On this point, the Court finds, first, that assuming that Plaintiffs have suffered an injury, they have not shown that it is "fairly traceable" to the noise ordinance.  Instead, it appears clear that Plaintiffs' alleged injury arises directly from the independent application of a completely different statute, Zoning Code § 120-192(B).  As mentioned earlier, § 120-192(B)(4)(d)[5][m], indicates that the Planning Commission may impose conditions on special use permits, including "noise limitations," "as may be necessary to prevent or minimize adverse effects upon other property in the neighborhood."  Although one of the Commission's decisions referred to the separate noise ordinance, it did not deny Plaintiffs' application based on the noise ordinance, and Plaintiffs therefore lack standing to challenge the noise ordinance.[22] *See, Advantage Media, LLC v. City of Eden*

---

[22]The 2013 decisions do not mention the noise ordinance, and the 2014 decision does not explicitly indicate that Nolas must comply with the noise ordinance in order to have outdoor amplified music. In that regard, the 2014 decision states that Plaintiffs "shall be" allowed to have at least five amplified events on Fridays and Saturdays without regard to the noise ordinance, and that if Plaintiffs wanted to apply to have additional amplified events they would need only to demonstrate their "efforts to adhere" to the noise ordinance, to the Commission's satisfaction.  Overall, the Commissions' decisions clearly strike a conciliatory

*Prairie*, 405 F. Supp. 2d 1037, 1041 (D. Minn. 2005) ("In First Amendment cases, the fairly traceable prong of standing requires a plaintiff to challenge the statutory provisions upon which the restriction on speech was based.") (citation omitted), *aff'd sub nom. Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006).

For that same reason, the Court further finds that Plaintiffs have not shown that their alleged injury would likely be addressed by a ruling that the City's noise ordinance is unconstitutional.  That is, even if the noise ordinance  were struck down, the Planning Commission could still limit Nolas' ability to have amplified outdoor music, as it already has, by finding that Nolas' excessive noise would have an "undue adverse effect" on the neighbors, pursuant to Zoning Code § 120-192(B)(3)(a)[1][b].  Plaintiffs' First Amendment challenge is directed only at the noise ordinance, not § 192(B) of the zoning code, and therefore they cannot avoid § 120-192(B) even if they could show that the noise ordinance was unconstitutional. *See, Harp Advert. Illinois, Inc. v. Vill. of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993) (Plaintiff which brought First Amendment challenge to village's sign code and zoning code after it was denied permit to erect billboard lacked standing, since "the village could block the sign simply by enforcing another, valid, ordinance already on the books."); *see also, KH Outdoor, L.L.C. v. Fulton Cty., Ga.*, 587 Fed.Appx. 608, 611 (11th Cir. 2014) (Recognizing that a plaintiff lacks standing to challenge an aspect of a zoning code if another, unchallenged portion of the same code would still deny plaintiff the relief he is seeking) (collecting cases from other circuits); *accord, Lamar Advert. of Penn, LLC v. Pitman*, 573 F. Supp. 2d 700, 710 (N.D.N.Y. 2008) (Plaintiff lacked standing to bring

---

tone of wanting to reach a reasonable compromise between Plaintiffs and their neighbors under Zoning Code § 120-192(B), rather than demanding strict compliance with the noise ordinance.

First Amendment challenge to section of village zoning ordinance prohibiting off-premises billboards, since a different section of the code, which Plaintiff did not challenge, would have independently prohibited the sign which Plaintiff sought to erect.).

For all of the foregoing reasons, Plaintiffs' First Amendment challenge to the City's noise ordinance must be dismissed for lack of standing.

<u>Amended Complaint</u>

Plaintiffs' response does not include an alternative request to file an amended pleading.  Instead, Plaintiffs' counsel's supporting affirmation [#8] merely posits the belief that if the Court were to find that the Complaint is deficient, Plaintiffs' would have the ability to file an amended pleading "without leave of the court."[23]  The Court does not agree. *See*, Fed.R.Civ.P. 15(a)(1)&(2).[24]  Further, the Court finds that, for the reasons already discussed, any attempt to amend would be futile.  Accordingly, to the extent that Plaintiffs might want the opportunity to amend, such application is denied.

CONCLUSION

Defendants' motion [#6] is granted and this action is dismissed with prejudice.

SO ORDERED.

Dated:       December 3, 2015
             Rochester, New York

                                        /s/ Charles J. Siragusa
                                         CHARLES J. SIRAGUSA
                                         United States District Judge

---

[23]Goewey Affirmation [#8] at ¶ ¶ 30-31.

[24]Any request by Plaintiffs to amend would not be made within 21 days after their service of the Complaint, or within 21 days after Defendants served their Rule 12(b) motion.  Accordingly, in order to amend Plaintiffs would need either Defendants' consent or the Court's permission.

22